**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **MIRNA GOMEZ-PEREZ**<br>Plaintiff<br><br>       v.<br><br>**JOHN E. POTTER, Postmaster General,**<br>**United States Postal Service,**<br>**Defendant** | **CIVIL NUMBER: 03-2236(DRD)** |

**OPINION AND ORDER**

Pending before the Court is the defendant, John E. Potter Jr., in his official capacity as Post Master General of the United States of America or the "Postal Service" (USPS) *Motion for Summary Judgment* (Docket No. 43) moving the Court to dismiss plaintiff's claims for alleged age discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.*, and under the Age Discrimination in Employment Act (ADEA). The USPS sustain that there are no issues of material fact hence the Postal Service is entitled to judgment as a matter of law. On November 11, 2005, the instant motion for summary judgment and its related Opposition, Reply and Surreply were referred to Magistrate Judge Gustavo A. Gelpi for a Report and Recommendation (R&R)(Docket No. 62). On January 30, 2006, the Magistrate Judge entered its recommendation wherein it was recommended that the defendant's motion for summary judgment be granted. (Docket No. 66). On January 31, 2006, plaintiff Mirna Gomez-Perez timely filed her objections to the Magistrate Judge's R&R (Docket No. 68). After considering plaintiff's objections, and reviewing *de novo* the R&R, for the reasons herein stated, the Court **GRANTS** USPS's *Motion for Summary Judgment* (Docket No. 43).

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Local Civil Rule 72(a), District of Puerto Rico. See Mathews v. Weber, 423 U.S. 261 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. *See*, Local Civil Rule 72(d); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

See 28 U.S.C. § 636(b)(1).

However, pursuant to FED.R.CIV. P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985), cert. denied, 474 U.S. 1021 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992). See also Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); Lewry v. Town of Standish, 984 F.2d 25, 27 (1st Cir. 1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); Keating v. Secretary of H.H.S., 848 F.2d 271, 275 (1st Cir. 1988); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

Provided plaintiff, Mirna Gomez-Perez has objected to the determinations addressed by the Magistrate Judge, the Court shall make a *de novo* determination of the R & R.

**MOTION FOR SUMMARY JUDGMENT**

The standard for summary judgment has been revisited by the First Circuit Court of Appeals on several occasions. Serapion v. Martinez, 119 F.3d 982, 986 (1st Cir. 1997),( citing McCarthy v. Northwest Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995))(collecting cases); Coyne v. Taber Partners I, 53 F.3d 454, 457 (1st Cir. 1995)(same).  A court may grant summary judgment only  "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial worthy issue as to any material fact. Perez v. Volvo Car Corporation, 247 F.3d 303, 310 (1st Cir. 2001); Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res., 232 F.3d 8, 14 (1st Cir. 2000); Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997). A fact is "material" if it potentially could affect the suit's outcome. Id. An issue concerning such a fact is "genuine" if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor. Id. At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." See Cadle Company v. Hayes, 116 F.3d 957, 959-60(1st Cir. 1997).

The summary judgment machinery operates in two phases. First, the movant must make a preliminary showing that there is no genuine issue of material fact which requires resolution in the crucible of trial. Once this showing has been made, the burden shifts to the nonmovant to demonstrate, through specific facts, that a trialworthy issue remains. Id.

In applying the standard, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (the party opposing the summary judgment motion). Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; see also United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). An absence of evidence on a critical issue weighs against the party –be it the movant or the nonmovant– who would bear the burden of proof on that issue at trial. Perez, 247 F. 3d at 310; see also Torres Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998); Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). Defendants must not only show that there is "no genuine issue of fact," but also that they are "entitled to judgment as a matter of law." Vega v. Rodriguez Puerto Rico Telephone Co., 110 F.3d 174, 178 (1st Cir. 1997).

FED.R.CIV.P. 56 does not ask which party's evidence is more plentiful, or better credentialed, or stronger weighted, because at the summary judgment stage, the Court may not weigh the evidence. Cortez-Irizarry, 111 F. 3d at 187; see also Casas Office Machines, Inc. v. Mita Copystar

America, Inc., 42 F.3d 668 (1st Cir. 1994). Summary judgment "admits no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1st Cir. 1987)).

The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000). This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Id. "The Court should give credence to the evidence favoring the nonmovant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id.

Similarly, unsettled issues of motive and intent as to the conduct of any party – as may arise in actions under §§ 1983 and 1985 – will normally preclude the Court from granting summary judgment. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 677 (1st Cir. 1996) (reversing summary judgment and emphasizing that "determinations of motive and intent . . . are questions better suited for the jury") (internal quotation marks omitted) (citation omitted); see also Tew v. Chase Manhattan Bank, N.A., 728 F.Supp. 1551, 1555 (S.D.Fla. 1990) ("Certain issues such as fraud, intent, and knowledge lend themselves to trial, rather than summary judgment. These matters can often only be proved by reliance upon circumstantial evidence except in the rare case where there is uncontroverted proof of a 'smoking gun.'"). However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences [or] unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996).

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts to the instant case have been vastly discussed in the several motions and counter motions filed by both parties. However, none of the parties have opposed the factual background as set forth in the Magistrate Judge's R&R hence, the Court deems that the facts as stated in the R&R are uncontroverted facts for disposition at the summary judgment stage.[1]

---

[1] The Court notes that plaintiff's *Objections to the Magistrate Judge's Report and Recommendation* (Docket No. 68) moves the Court to admit and add certain facts to the Magistrate Judge's R&R which were unchallenged and admitted by defendant hence could be crucial, should as plaintiff contends, sovereign immunity

Plaintiff, Mirna Gomez-Perez is within the protected class for purposes of an ADEA claim. She began working with the USPS in New York on or about March 1987. After a reassignment to the Caribbean District, in or about July 1997, plaintiff was transfer to the Dorado station in a "mutual swap" of stations with a Dorado employee. Plaintiff then worked at the Dorado station from July 5, 1997 throughout November 2, 2002, occupying a full-time regular position as a Window Distribution Clerk under the supervision of Post Master Onell Rivera (Rivera).

Due to certain medical conditions suffered by plaintiff's mother, on or around October 24, 2002, plaintiff requested a transfer to a part-time flexible position as a Window Distribution Clerk at the Moca Post Office. However, Rivera attempting to convince plaintiff to remain at her post in the Dorado Post Office, advised plaintiff to reconsider the requested change as she was changing into a part-time flexible position which did not encompass a guaranteed forty hour work schedule and that the requested transfer was not temporary in nature. On November 2, 2002, plaintiff's transfer was approved and she began work in the Moca Post Office as a part-time Flexible Window Sales Associate. Plaintiff's supervisor was Post Master Jose Antonion Cintron, who was reassigned in January 2003 to the Sabana Grande Post Office but remained supervising the Moca Post Office until a new Post Master was hired. While being employed at the Moca station, on March 5, 2003, plaintiff was subjected to a pre-disciplinary talk by the plaintiff's area cluster leader Mr. Heriberto Ramos at Cintron's request. The meeting focused on complaints received by male co-workers stating that they felt sexually harassed by plaintiff's way of greeting male employees by a kiss in the cheek.

Parallel to the transfer request initiated by plaintiff, on October 30, 2002, another postal employee, Ivette Claudio requested to be reassigned from the Air Mail Facility to the Dorado Post Office. On November 6, 2002, Dorado's Post Master, Rivera, informed Ms. Ivette Claudio the

---

has been waived under §633(a). Plaintiff avers that these facts must be included as uncontroverted facts should the Court reject the Magistrate Judge's recommendation to dismiss plaintiff's retaliation claims rather than addressing the merits of said claim. The facts to be added as requested by plaintiff are the following:

    1) Shortly after plaintiff had filed an EEO complaint, plaintiff's supervisors, Rivera and Cintron met at a quarterly management meeting. In said meeting Rivera informed Cintron that plaintiff had filed an EEO administrative complaint.

    2) Ramos, Cintron, Mr. Ruben Muñoz(shop steward), and Mr. Ricardo Morales were present during the March 5, 2003 meeting.

    3) At the March 5, 2003 meeting, Cintron took notes and prepared a list of 8 accusations allegedly discussed with plaintiff that day in Cintron's office.

    4) Only a few days had elapsed between the quarterly management meeting and the March 5, 2003 meeting.

    5) After the March 5, 2003 meeting, Cintron ordered Mr. Hector Hermida not to assign plaintiff more than six hours of work each day.

availability of a part-time flexible position within the Dorado Post Office. Such part-time flexible position availability within the Dorado Post Office resulted from Rivera informing on November 22, 2002, the President of the Local Union the vacancy created by Gomez's transfer to the Moca station and Rivera's intention to revert Gomez's vacancy from a full-time position to a part-time flexible position. Further, Rivera informed the President of the Local Union the process to be followed in order to complete the reversion.

Notwithstanding plaintiff had been transferred to the Moca Post Office at her own request on November 2, 2002, shortly thereafter on November 27, 2002, Rivera confirmed by letter a previous telephone conversation he had with plaintiff requesting her to put into writing her request to return to the Dorado Post Office, the reasons for plaintiff's request and plaintiff's availability to work in a part-time position. In said letter, Rivera further informed plaintiff that there was a written commitment with another employee to fill the flexible part-time position and that said commitment was pending final approval by the District Office. On that same date, November 27, 2002, plaintiff filed a grievance procedure with the Union relating to the transfer request to the Dorado postal station. Said grievance procedure was ultimately denied.

On February 22, 2003, plaintiff filed an administrative procedure before the EEOC against the Postal Service alleging age discrimination, specifically against Rivera. In her EEOC charge, plaintiff alleged that Rivera took advantage of the opportunity to get rid of her because she was not able to work with packages, and that plaintiff believed that because Claudio was younger than plaintiff, Rivera rather wanted her as an employee.

On November 18, 2003, plaintiff filed the instant case against her employer, the USPS, alleging age discrimination and retaliation pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §2000 *et seq*., and presumably under ADEA. Plaintiff alleges that: 1) she was discriminated because of her age; 2) that her position was granted to an employee younger in age and with less experience than plaintiff; and 3) that age was the determinative factor at the time her request to be rehired at her formal workplace was denied and in the transfer of a younger, and with less working experience postal employee to plaintiff's former position. Further, plaintiff avers that after filing an EEOC administrative charge, the USPS in retaliation thereof denied her request to be transferred to her prior workplace, reduced her working shift, and subjected her to humiliation.

Defendant's motion for summary judgment sustains that plaintiff's claims should be dismissed inasmuch plaintiff has failed to establish a *prima facie* case of age discrimination and

retaliation consequently, it is unable to support the discrimination claims alleged in the complaint. Plaintiff countered focusing mainly in its retaliation claim and failing to address the arguments relating to the age discrimination claim. The defendant Replied to plaintiff's opposition and raised new arguments of law centered in the position that the Government has not waived its sovereign immunity to be sued under ADEA for retaliatory hence plaintiff's retaliation claims should be dismissed. Plaintiff surreplied alleging precisely the contrary, to wit, that the Government has waived its immunity. The Court notes that both parties have submitted jurisprudence from other sister courts. However, in the realm of the First Circuit, the issue constitutes a matter of first impression.

## APPLICABLE LAW AND LEGAL ANALYSIS

### I. ADEA CLAIMS

At the outset, the Court notes that plaintiff has not objected the conclusion reached by the Magistrate Judge in its R&R as to plaintiff not developing an argument opposing the defendant's request to dismiss plaintiff's ADEA claims. Furthermore, the Magistrate Judge recommended that plaintiff's ADEA claims should be dismissed because, in its opinion, plaintiff had failed to establish a *prima facie* case.

Notwithstanding, the Court notes that plaintiff's objection states that "... it does not object to all the Magistrate Judge's conclusion with respect to what is labeled as 'Age Discrimination Claims' under Section B, since a reading of Plaintiff's motions in opposition to summary judgment show that plaintiff had waived other claims of discrimination under ADEA, effectively reducing her case to a discrimination on age based entirely on retaliatory types of discrimination". (Docket No. 68, Objections to the Magistrate Judge's Report and Recommendation, P.1-2). The Court deems that plaintiff has expressly abandoned its non-retaliatory substantive ADEA claims and has acquiesced to the Magistrate Judge's recommendation to grant the Government's request for dismissal. Therefore, the Court does not have to conduct a review under the plain error standard because plaintiff has *de facto* withdrawn its ADEA claims. Consequently, the Magistrate Judge's Report and Recommendation is **ADOPTED** and plaintiff's ADEA claims against the defendant is hereby **DISMISSED WITH PREJUDICE**.

### II. ADEA RETALIATION CLAIMS

The Magistrate Judge's R&R concluded that plaintiff's retaliation claims under ADEA should be dismissed because, as stated previously, the United States has not waived its sovereign

immunity thus, retaliation claims under ADEA are not actionable under §633(a). The Magistrate Judge clearly stated the well established rule within the federal jurisprudence that the United States may not be sued unless a specific federal statute expressly authorizes the suit. The Magistrate Judge specifically noted that ADEA, when invoked in the private employment sector, prohibits retaliation against employees complaining of discrimination under ADEA §623(d). However, the Magistrate Judge noted that the language of the federal counterpart does not allow retaliation claims under ADEA §633a(a).

Plaintiff's timely objected the conclusions reached by the Magistrate Judge and reiterated its argument under the waiver of immunity doctrine as set forth in Forman v. Snell, 271 F.3d 285 (D.C.Cir. 2001), *cert. denied*, 536 U.S. 958 (2002). Specifically, plaintiff objects to the Magistrate Judge labeling the Forman opinion as a "perceived breadth" analysis and sustains that the Forman Court concluded that under §633(a) the waiver of sovereign immunity is expressed rather than implied. Further, plaintiff sustains that the reasoning set forth in Jackson v. Birmingham Bd. of Educ., 125 S.Ct. 1497 (2005) is fully applicable to the instant case, but it was not brought to the attention of the Magistrate Judge because the case, unbeknownst to counsel, dealt with other anti-discrimination statute. Moreover, plaintiff sustains that Jackson's, definition of "discrimination" controls the instant controversy and supports the view of the Forman court inasmuch the plain meaning of "discrimination" in both cases is identical. Counsel for plaintiff affirms that under the Jackson court analysis, a statute does not have to contain the express use of the word "retaliation" in order to encompass a prohibition of retaliation.[2]

It is settled law within the federal jurisprudence that the standard to determine whether sovereign immunity has been waived is demanding. Department of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)(*citing* Lane v. Pena, 518 U.S. 187, 192-193 (1996)). Further, waivers are to be narrowly construed in favor of the sovereign and the ambiguities are to be construed against waiver. Orff v. United States, __ U.S. ___, 125 S.Ct. 2606, 2610 (2005); United States v. Williams, 514 U.S. 527, 531 (1995). Accordingly, a waiver of federal sovereign immunity must be unequivocally expressed in the statutory text. Lane v. Pena, 518 U.S. at 192. In summary, the general principle is that the United States cannot be held as having entered consent to be sued

---

[2] Jackson's discrimination and retaliation analysis was performed within personal causes of action filed pursuant to Title IX. The Jackson court determined that retaliation is a form of discrimination because the complainant has been subjected to differential treatment resulting from the initial complaint.

without an express and unequivocal statutory waiver. As stated by the Supreme Court, "[t]he corollary to this settled principle is that a waiver of sovereign immunity may not be implied; nor can '[a] statute's legislative history ... supply a waiver that does not appear clearly in any statutory text'". Lane v. Pena, 518 U.S. at 192.

The Age Discrimination in Employment Act of 1967 (ADEA) makes it unlawful for an employer, including a State, "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual ... because of such individual's age". 29 U.S.C. §623(a)(1). It was not until 1974 when §633a was put into effect, that ADEA coverage was extended to federal employees creating an exclusive remedy for age discrimination in federal employment. Christie v. Marston, 451 F.Supp. 1142 (N.D. Ill. 1978).[3] Consequently, the federal government has consented to be sued in federal court for such actions arising from discriminatory acts against federal employees because of the employee's age.

Further, an ADEA retaliation claim does not have as a prerequisite that plaintiff previously prevailed in the underlying substantive ADEA claim. Ingels v. Thiokol Corp., 42 F.3d 616 (10th Cir. 1994). Notwithstanding, the issue of law before the Court is to determine whether a plaintiff may file a retaliation claim because of discriminatory conduct resulting from its age under §633a(a). In other words, does the language within §633a(a) include, impliedly or expressly, a waiver to sovereign immunity thus, the federal government may be sued for retaliation claims under ADEA. The matter has not been entertained in our Circuit Court of Appeals.

At the outset, the Court notes that §633a(f) provides that "[a]ny personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of section 631(b) of this title and the provisions of this section". As stated by the Magistrate Judge this is "an exclusivity clause that limits application of any further provision of the chapter to the section affecting federal employers". Hence, the discrimination form of retaliation contained within the applicable statutory scheme for the private sector in §623(d) does not apply to federal employees because §633a(f)

---

[3] In its relevant parts, §633a(a) provides that: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments, ... in executive agencies..., in the United States Postal Service and the Postal Rate Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units in the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the General Accounting Office, and the Library of Congress shall be made free from any discrimination based on age".

excludes the application of any other section within ADEA, and because under ADEA's §623(d), the federal government is excluded from the definition of employer.[4]

Plaintiff avers that the doctrine expressed in Forman v. Small, constitutes a cogent well expressed argument finding a waiver for retaliation claims under ADEA against a federal employer contained at §633a(a). The Forman court concluded that the broad, sweeping and plain language within §633a(a), referring to "any discrimination" based on age, advances the purpose of the statute to the effect that a "work place cannot be free from any age discrimination if an employer can take an adverse employment action against its employees because the employee has brought an age discrimination claim against the employer". Forman v. Small, 271 F.3d at 298-299. The Court reasoned that ADEA statutory differences amongst the federal and private sectors were not dispositive of the issues as determined by other sister courts because although §633a(f) precludes adoption of other sections within ADEA to federal employment, the statute's unqualified language encompasses a claim for retaliation because "analytically a reprisal for an age discrimination charge is an action in which age bias is a substantial factor". Forman v. Small, 271 F.3d at 297(citations omitted). The Court proceeded to conclude that the language of §633a cannot be read to suggest "that Congress intended the federal workplace to be less free of age discrimination than the private sector" because otherwise "absurd results" would follow.

Performing an examination of §633a(a)'s legislative history, the Forman Court noted that Congress' intent when enacting the statute was "to remove discriminatory barriers against employment of older workers in government jobs at the Federal and local government levels as [ADEA] has and continues to do in private employment". Forman v. Small, 271 F.3d at 297(citations omitted). Further, as to the exclusivity language contained within §633a(f), the Forman court determined that said language does not preclude a determination that the waiver was expressly contained within the statute, as opposed to §623(d) wherein a retaliation cause of action is contained *ad verbatim*, because it was not borrowing provisions from elsewhere in the ADEA statutory framework. Rather, the court relied on the broad language of §633a(a) interpreting that there cannot be a work place free from age discrimination if the employer is free to adverse employment action against the employee because the employee had initiated a claim against its

---

[4]In its relevant parts, §623(d) provides that: "[i]t shall be unlawful for an employer to discriminate against any of his employees ... because such individual ... has made a charge, ... or participated in any manner in an investigation, proceeding, or litigation under the [ADEA].

employer for age discrimination, said action being precluded under §633a(a).

To reach its ultimate conclusion, the Forman court examined previous Fifth Circuit jurisprudence comparing by analogy the language contained within §633a(a) and 42 U.S.C. §2000e-16 wherein Congress waived sovereign immunity for Title VII claims to include a claim for retaliation. The relevant jurisprudence examined by the Forman court compared §2000e-16's language with that of 42 U.S.C. §§2000e-3 and 2000e-4, and determined that the latter was narrowly drawn and prohibited certain types of discrimination while §2000e-16's language was drafted broadly enough to prohibit any type of discrimination, to wit, those considered in §§2000e-3 and 2000e-4, and any other as well.[5] Then, the Forman court examined the language of §633a(a) and §2000e-16 and concluded that both statutes were drafted using identical language creating a cause of action for federal employees under ADEA and Title VII. Consequently, these statutes should be interpreted consistently.

Finally, the Forman court ignored other sister court's reasoning as to the exclusivity provision contained in §633a(f). The court concluded, as stated previously, that the broad and sweeping language within §633a(f) allowed any type of discriminatory conduct, including retaliation, because its legislative history did not suggest a limitation as to the broad scope of coverage of §633a as originally intended, and secondly, because it was not borrowing other

---

[5] In its relevant parts, 42 U.S.C. §2000e-16 provides:
**Discriminatory practices prohibited; employees or applicants for employment subject to coverage**
All personnel actions affecting employees or applicants for employment ... in military departments, ... in executive agencies..., in the United States Postal Service and the Postal Rate Commission, in those units in the Government of the District of Columbia having positions in the competitive service, and in those units in the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Printing Office, the General Accounting Office, and the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.

In turn, 42 U.S.C. §2000e-3 reads as follow:
**Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings**
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

provisions within ADEA.[6]

The Government's argument before the Magistrate Judge sustains the thesis that the language contained in §633a(a) does not amount to a waiver of immunity. The Government relied in jurisprudence from other sister courts, to wit, Cyr[7] and Mineta[8]  The Cyr court examined the Forman and the Bornholdt rulings and deemed the rulings as unpersuasive because an analysis based on the perceived breadth of the statute was contrary to the Supreme Court's requirement that a waiver of immunity be expressed in unequivocal statutory language. The Cyr Court determined that the sister courts' reasoning in Forman failed inasmuch the statutory language provided by Congress within §633a(a) failed to provide a retaliation cause of action nor expressly and unequivocally provided a waiver of sovereign immunity. Finally, the Cyr court concluded that it is not "proper to infer a waiver based on the breadth of the statutory language or speculations about congressional intent [because] such inferences and speculations have no place in federal sovereign immunity law". Cyr v. Perry, 301F.Supp.2d at 534 (*citing* Lane v. Pena, 518 U.S. 187, 192(1996); Research Triangle Inst. v. Bd. of Governors of the Federal Reserve Sys., 132 F.3d 985, 987 (4th Cir. 1997)).

Distinguishing the conclusion reached in Forman, the Cyr Court reasoned that "there is no reasonable grounds to conclude that 'retaliation' is a form of 'discrimination based on age' because, as noted, retaliation is a different claim with different elements and can be established without a showing of age animus". Cyr v. Perry, 301F.Supp.2d at 532. Furthermore, after examining regulations containing express language providing a cause of action for retaliation under ADEA claims expressly waiving the sovereign immunity, the Cyr Court restated the well established principle that federal regulations cannot supply a waiver rather, the waiver must be found explicitly and unequivocally in the statute. Cyr v. Perry, 301 F.Supp.2d at 532-534.

Finally, the Cyr court determined that the Government has not waived its immunity for retaliation claims under ADEA by means of merely comparing said statute with waiver of immunity under Title VII claims pursuant to 42 U.S.C. §2000e-16, prohibiting discrimination by federal employer. The Court reasoned that §2000e-16 allowed incorporating language from other provisions

---

[6] The D.C. Circuit Court noted that in Bornholdt v. Brady, 869 F.2d 57, 63 (2nd Cir. 1989) *in dictum* the Second Circuit observed that the government waived sovereign immunity for ADEA retaliation claims.

[7] Cyr v. Perry, 301F.Supp.2d 520 (E.D. Virginia 2004).

[8] Whitman v. Mineta, 382 F.Supp.2d 1130 (D. Alaska 2005).

of the statute that expressly and unequivocally prohibited retaliation however, said course of action is precluded by the exclusivity clause at §633a(f).

Similarly, in Whitman v. Mineta, the Court examined other sister courts' decisions addressing whether ADEA's language contains a waiver of immunity. As to the Forman court's ruling, Whitman concluded that the analysis performed in the former inferred an implied immunity waiver since the language lacked an express waiver. Whitman v. Mineta, 382 F.Supp.2d at 1134. The Mineta court joined the analysis performed in Cyr concluding that the breadth of §633a(a) does not necessarily indicate an intent to encompass retaliation since the claim and burden of proof of an ADEA cause of action is different from those of a retaliation claim. Whitman v. Mineta, 382 F.Supp.2d at 1135.

Furthermore, in Mineta the court reasoned that to determine whether the language of the statute contains evidence of an immunity waiver being in effect, the language, purpose and history of the statute must be examined. Having examined the statutory language and reaching identical conclusion as in Cyr, the Mineta court proceeded to examine the second and third sources of potential evidence of waiver. As to the purpose of the ADEA, Mineta determined that it is three-folded, to wit, to promote employment of older persons based on their agility rather than age; to prohibit arbitrary age discrimination in employment; and to help to promote ways of solving problems arising from the impact of age on employment. Mineta, 382 F.Supp.2d at 1135. The court reasoned that since the statute's purpose lacked any reference to include protection from employer retaliation, the intent to include reprisal protection was obviated. Likewise, examining the history of the statute, the court concluded that there was lack of persuasive evidence of a waiver because at the time §633a(a) was enacted the applicable provisions to the private sector were already in place, and Congress openly avoided extending its application to federal employment. Hence there is an express exclusion of a statutory disposition previously expressly included by Congress applicable to the private industry. Finally, Mineta also determined that the language of the exclusivity provision in §633a(f) evidences that no other provision within ADEA could logically be invoked against a federal employer specifically, the provision relating to the express prohibition of retaliation in the private sector pursuant to §623(d).

Having expressed the legal background, and pursuant to the relevant Supreme Court and the First Circuit jurisprudence, the Court must determine whether §633a(a)'s language contains an implied or express waiver of immunity. Addressing firstly, the language typically used for express

waivers as compared to the language provided in §623(d) it is evident that no express waiver is provided for retaliation claims within federal employment. As to whether an implied waiver does in fact exists, as stated previously, the controversy is an issue of first impression within the First Circuit's district courts.

The Court is conscious of the well settled principle that waiver of the Federal Government's sovereign immunity must be unequivocally expressed in the statute and will not be implied. Lane v. Pena, 518 U.S. at 192 (citations omitted). Likewise, a waiver of immunity shall be strictly construed, in terms of its scope, and further instances of ambiguity must be decided in favor of the sovereign immunity. United States v. Williams, 514 U.S 527, 531 (1995); Library of Congress v. Shaw, 478 U.S. 310, 318 (1986). Similarly, when the Government consents to be sued, the limitations and conditions of said consent must be strictly observed and exceptions are not to be implied. Lehman v. Nakshian, 453 U.S. 156, 161 (1981). Furthermore, the Supreme Court has also ruled that a statute's legislative history cannot provide the unequivocal waiver that must clearly appear in the statutory text. United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992). Therefore, in order to sustain that the Government has consented to be sued for retaliation under ADEA, the waiver of immunity must extend unambiguously to such retaliation claims.

In the First Circuit the doctrine of sovereign immunity has been narrowly constructed as well. For instance, it has been clearly established that ADEA plaintiffs under §633a are not entitled to jury trials as their private sector counterparts. Nowd v. Rubin, 76 F.3d 25, 27 (1st Cir. 1996)(*citing* Lehman v. Nakshian, 453 U.S. 156, 160-161 (1981). Likewise, the First Circuit has refused to grant attorneys fees under §633a(c) allowing such equitable remedies that will effectuate the purposes of ADEA because the Act failed to make express reference to award attorney's fees against the United States contrary to its private sector counterpart incorporating explicit incorporation under the Fair Labor Standards Act §216(b). Nowd v. Rubin, 76 F.3d at 27.

Thus, the undersigned is bound to comply with the applicable jurisprudence of the appellate court and conclude that unless there is express language providing a waiver of sovereign immunity, the United States cannot be sued for retaliation claims under ADEA's §633a(a). Further, the Court notes that the First Circuit court has acknowledge that under §633a there is no prerequisite to exhaust administrative procedures before initiating a suit in federal court contrary to claims under Title VII and claims pursuant to 42 U.S.C. §2000e-16. Lavery v. Marsh, 918 F.2d 1022, 1025 n.4 (1st Cir.

1990).[9]  Consequently, plaintiff's analogy with 42 U.S.C. §2000e-16 fails.

Finally, plaintiff's recognize that in the arguments previously presented before the Magistrate Judge they failed to incorporate discussion relating Jackson v. Birmingham Bd. of Education. Notwithstanding, plaintiff move the Court to consider said arguments in their objections to the R&R. However, it is known that arguments not raised before a Magistrate Judge are deemed waived and the party failing to raise such issue is not entitled to a *de novo* review.  Borden v. Secretary of H.H.S., 836 F.2d at 6(holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").  See generally United States v. Valencia, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).  It is known that a party must take before the Magistrate Judge "not only their 'best shot' but all of their shots".  Singh v. Superintending School Committee, 593 F.Supp. 1315. 1318 (D.Me. 1984).  Consequently, plaintiff's request that this Court consider Jackson fails.

## CONCLUSIONS

For the reasons stated herein, the Court **ADOPTS *in toto*** the Magistrate Judge's Report and Recommendation (Docket No. 66) **GRANTS** USPS's *Motion for Summary Judgment* (Docket No. 43) and hereby **DISMISSES** plaintiff's ADEA claims and plaintiff's retaliation claims under ADEA against all defendants **WITH PREJUDICE**.  **Judgment** shall be entered.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico this 28th day of February 2006.

S/DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE

---

[9] The Court notes that in Lavery the appellate court borrowed Title VII's statute of limitations to bring forth a claim under ADEA §633a because the statute itself was silent as to the proper statute of limitations for such claims.  However, one matter is to borrow a statute of limitations, and the other is to waive sovereign immunity in absence of express language and in presence of a self-contained scheme defining the remedial limits of federal government liability under the ADEA.  After all, "the waivers of sovereign immunity are to be strictly construed in favor of the United States and 'must not be enlarged beyond such boundaries as [the statute's] language **plainly** requires".  Nowd v. Rubin, 76 F.3d at 27 (*citing* United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994))(emphasis added).